1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RHIANNON CORNISH,

11              Plaintiff,                    No. CIV S-06-0107 KJM

12        vs.

13   MICHAEL J. ASTRUE,[1]
14   Commissioner of Social Security,

15              Defendant.              ORDER
                                    _____/
16

17              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

     Security ("Commissioner") denying an application for Child's Supplemental Security Income
18
     ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the
19
     court will deny plaintiff's motion for summary judgment or remand and grant the
20
     Commissioner's cross-motion for summary judgment.
21
     /////
22
     /////
23

24   _____

25        [1]  On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social
     Security, replacing Jo Anne B. Barnhart, the original defendant herein.  Pursuant to 42 U.S.C.
26   § 405(g) and Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in this
     action.

                                          1

I. Factual and Procedural Background

        In a decision dated May 21, 2005, the ALJ determined plaintiff was not disabled.[2]
The ALJ's decision became the final decision of the Commissioner when the Appeals Council
denied plaintiff's request for review.  The ALJ found plaintiff has severe impairments of asthma,
a deviated septum, allergic rhinitis/sinusitis, thalassemia,[3] mild obesity, and minimal inward
deviation of the left foot, but these impairments do not meet or medically equal a listed
impairment; plaintiff does not have an extreme limitation in any domain of functioning or a
marked limitation in two domains of functioning and her impairments do not functionally equal
the severity of the listings; plaintiff's subjective complaints and the written statements and
testimony of her mother are considered credible only to the extent they are supported by the
evidence of record; and plaintiff is not disabled.  Administrative Transcript ("AT") 22.

/////

/////

/////

---

        [2] Child's Supplemental Security Income ("SSI") is paid to disabled persons under the age
of eighteen.  A child is considered disabled if the child has medically determinable physical or
mental impairments that result in marked and severe functional limitations.  42 U.S.C.
§ 1382c(a)(3)(C)(i).  A three step sequential evaluation is utilized in determining eligibility for
Child's SSI.  The following summarizes the sequential evaluation:

        Step one:  Is the claimant engaging in substantial gainful
        activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
        Step two:  Does the claimant have a "severe" impairment,
        i.e., causes more than minimal functional limitations?  If so,
        proceed to step three.  If not, then a finding of not disabled is
        appropriate.
        Step three:  Does the claimant's impairment or combination
        of impairments meet, medically equal, or functionally equal an
        impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If not, he
        is not disabled.

20 C.F.R. § 416.924(a)-(d).

        [3] Thalassemia is a kind of hereditary anemia.  See Dorland's Illustrated Medical
Dictionary 1703 (28th ed. 1994).

1   Plaintiff contends the ALJ erred in failing to use a medical expert to evaluate the

2   record in its entirety, credit plaintiff's treating physician, credit plaintiff and her mother regarding

3   plaintiff's subjective complaints, and articulate and analyze plaintiff's impairments in the body of

4   the decision.

5   II.  Standard of Review

6   The court reviews the Commissioner's decision to determine whether (1) it is

7   based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

8   record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

9   Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

10  Substantial evidence means more than a mere scintilla of evidence, but less than a

11  preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

12  Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

14  U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S.

15  197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler,

16  782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that

17  detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

18  1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

19  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

20  substantial evidence supports the administrative findings, or if there is conflicting evidence

21  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see

22  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

23  improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d

24  1335, 1338 (9th Cir. 1988).

25  /////

26  /////

1    III.  Analysis

2        A.  Examination of Record in its Entirety

3            Plaintiff contends the ALJ erred by failing to retain an expert to evaluate the case

4    based on the record in its entirety.  Plaintiff argues that the Ninth Circuit's holding in Howard ex

5    rel. Wolff v. Barnhart, 341 F.3d 1006 (9th Cir. 2003), and the subsequent Social Security

6    Acquiescence Ruling 04-1(9), required the ALJ to retain a specialist to evaluate the record "in its

7    entirety."  Plaintiff overstates the requirements imposed on the ALJ in this regard.

8            In Howard, the Ninth Circuit held that 42 U.S.C. § 1382c(a)(3)(I) requires the

9    ALJ to "make a reasonable effort to obtain a case evaluation, based on the record in its entirety,

10   from a pediatrician or other appropriate specialist rather than simply constructing his own case

11   evaluation from the evidence in the record."  Id. at 1014.

12           Following that decision, the Social Security Administration issued Social Security

13   Acquiescence Ruling 04-1(9), 69 Fed. Reg. 22578 (Apr. 26, 2004) ("SSAR 04-1(9)").  That

14   Ruling noted a discrepancy between the Agency's meaning of the terms "determination" and

15   "decision" and the Ninth Circuit's interpretation of § 1382c(a)(3)(I) in Howard.  In particular, the

16   Administration noted that its regulations make clear that section 1382c(a)(3)(I)

17               applies only to determinations made by a State agency and not to decisions
                 made by ALJs or AAJs (when the Appeals Council makes a decision).
18               The words 'determination' and 'decision' are terms of art in our program,
                 defined in our regulations. . . . [T]he word 'determination' means the
19               initial determination or reconsidered determination, while the term
                 'decision' means the decision made by the ALJ or the Appeals Council.
20               Our regulations. . . maintain this distinction, providing that the
                 requirement for review by a pediatrician or other appropriate specialist in
21               childhood SSI cases applies only to cases decided by State agencies at the
                 initial and reconsideration levels of the administrative review process.
22

23   SSAR 04-1(9) (internal citations omitted).

24           Because the Ninth Circuit's decision in Howard interpreted § 1382c(a)(3)(I) more

25   broadly, the Administration issued the Acquiescence Ruling to be applied only to cases in states

26   within the Ninth Circuit.  For cases subject to that ruling, the ALJs and AAJs "must make

4

1  reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a

2  field of medicine appropriate to the disability of the individual . . . evaluates the case of the

3  individual."  Id.  To satisfy this requirement, the ALJ may rely on a case evaluation made by a

4  State agency consultant that is already in the record or on the testimony of a medical expert.  Id.

5          Plaintiff misreads SSAR 04-1(9) as mandating an independent evaluation by a

6  medical expert.  Here, the ALJ relied on the evaluation of plaintiff's treating physician, Dr. Brij

7  Gupta, M.D., completed after the hearing on February 22, 2005, and based on his long-term

8  treatment of plaintiff, as well as the evaluations of two state agency consultants.  Such reliance

9  was appropriate and the ALJ was not required to retain an outside medical expert.

10         Because SSAR 04-1(9) allows reliance on an evaluation completed by a state

11 agency consultant, it follows that an ALJ may rely on an evaluation prepared by a treating

12 physician.  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (ordinarily more weight is

13 given to the opinion of a treating professional, who has a greater opportunity to know and

14 observe the patient as an individual).  In this case, Dr. Gupta began treating plaintiff in May

15 1998, only a month after her birth, and continued to provide treatment following the date of the

16 hearing.  AT 317, 209-316.  On February 22, 2005, Dr. Gupta completed an evaluation regarding

17 plaintiff's functioning, and opined that plaintiff had no limitations in acquiring and using

18 information, attending and completing tasks, or interacting and relating with others.[4]  AT 424.

19 He assessed less than marked limitations in plaintiff's health and physical well-being and in

20 "caring for herself" (e.g., maintaining a healthy emotional and physical state, coping with stress).

21 Id.  He assessed "marked" limitations only in moving about and manipulating objects.  Id.

22 /////

23 _____

24     [4] Dr. Gupta's assessment concerned the six "domains" of functioning considered in
    determining whether a child has an impairment (or combination of impairments) that is
    "functionally equal" to the listings.  20 C.F.R § 416.926a(a)-(b).  The domains are: (1) acquiring

25 and using information, (2) attending and completing tasks, (3) interacting and relating to others,
    (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical

26 well-being.  20 C.F.R § 416.926a(b)(1).

1    The ALJ credited this evaluation, diverging from it only with regard to his

2   assessment of "marked" limitations in moving about and manipulating objects.  AT 19.  In giving

3   less weight to Dr. Gupta's assessment of plaintiff's functioning in this category, the ALJ cited a

4   report from plaintiff's first grade teacher noting plaintiff was "normal" in moving her body from

5   one place to another and had only some difficulty with handwriting.  AT 19, 118-119.  The ALJ

6   also cited the assessments of two state agency physicians who found plaintiff to have little or no

7   limitation in this domain.  AT 19, 129, 327.  In any event, as noted by the ALJ, even had he

8   accepted Dr. Gupta's assessment that plaintiff had marked limitations in this domain, plaintiff's

9   impairments would still not functionally equal any listed impairment.  AT 19; see 20 C.F.R §

10  416.926a(d) (a child must have marked limitations in two of the functioning domains, or an

11  extreme limitation in one domain, to qualify as disabled).

12    The ALJ's disability determination was supported by plaintiff's treating

13  physician's evaluation, which itself was based on continuing treatment of plaintiff from her birth

14  to the present.  This evaluation satisfies the requirements of SSAR 04-1(9) and the Ninth

15  Circuit's holding in Howard.

16    B.  Treating Physician

17    Plaintiff also asserts as an independent basis of error the ALJ's rejection of Dr.

18  Gupta's opinion that plaintiff had "marked" limitations in moving about or manipulating objects.

19  Again, the ALJ's finding regarding plaintiff's functioning in this domain was the only significant

20  deviation from Dr. Gupta's assessment.  The ALJ's findings as to plaintiff's functioning in the

21  other domains was largely consistent with Dr. Gupta's assessment.

22    To evaluate whether an ALJ properly rejected a medical opinion, in addition to

23  considering its source, the court considers whether (1) contradictory opinions are in the record,

24  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

25  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

26  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

6

1   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester,

2   81 F.3d at 830.

3           Here, as noted, Dr. Gupta's opinion regarding plaintiff's limitations in "moving or

4   manipulating objects" was contradicted by two state agency physicians.  AT 19, 129, 327.  Dr.

5   Sharon Amon, M.D., assessed plaintiff to have "no limitations" in moving about or manipulating

6   objects, but did note the possibility of "minimal" limitations in this domain due to pronation of

7   plaintiff's foot.  AT 129.  This is consistent with the opinion of state agency physician, Dr.

8   Antoine Dipsia, M.D., who assessed "less than marked" limitations in moving about and

9   manipulating objects, while noting corrective treatment plaintiff had received for her feet.  AT

10  327.  The record shows that plaintiff's foot condition was noted at age 12 months, and that with

11  treatment, the right foot was "much improved."  AT 288.  These same records show plaintiff was

12  fitted with a cast for her left foot in 2000.  Id.  Thereafter, there is a marked absence of comments

13  in the treatment notes regarding plaintiff's feet.  A consultative examination by Dr. Rene I.

14  Marasigan, M.D., on October 22, 2003, confirms plaintiff's minimal limitations with regard to

15  her foot impairment.  Dr. Marasigan noted plaintiff's treatment regarding the inward deviation of

16  her feet, and remarked that "presently she is doing well and does not require any cast."  AT 168.

17  Upon examination, Dr. Marasigan noted that the "[e]xtremities showed no limitation of

18  movement with very minimal inward deviation of the left foot compared to the right."  AT 169.

19  Plaintiff's teacher's observations are consistent with these clinical findings.  In a form completed

20  on November 2, 2003, plaintiff's teacher wrote that plaintiff "participates weekly in motor

21  development day.  During this time she is able to ride scooters and tricycles and run, jump and

22  climb with her peers."  AT 205.

23          The ALJ's finding that plaintiff had "less than marked limitations" in moving

24  about and manipulating objects was supported by the opinions of the state agency physicians,

25  which were in turn supported by independent clinical findings and substantial evidence in the

26  record.  The ALJ's reasons for rejecting Dr. Gupta's opinion in this regard – i.e., the

7

1  contradictory opinions of the state agency physicians, the contradictory observations of plaintiff's

2  teacher, and the lack of evidence regarding any continuing foot problems – are sufficiently

3  supported by the record, and are specific and legitimate, as required by law.

4         Moreover, even were the court to credit Dr. Gupta's opinion in this regard, a

5  finding of "not disabled" would still be mandated under the regulations.  This is true even when

6  taking into account the effect of plaintiff's asthma on her mobility, which the ALJ did.  AT 19

7  (noting accommodations made at school, including alternative physical education).  A finding of

8  marked limitations in only one domain under the regulations mandates a finding that plaintiff is

9  not disabled.  20 C.F.R § 416.926a(d).

10      C.  Credibility

11         Plaintiff next takes issue with the ALJ's finding that plaintiff's "subjective

12  complaints and the written statements and testimony of her mother are considered credible only

13  to the extent they are supported by the evidence of record as summarized in the text of this

14  decision."  AT 22.  Plaintiff alleges that the ALJ improperly discredited plaintiff without

15  undertaking the required "two-step" analysis.

16         Under this "two-step" analysis, the ALJ should first consider objective findings

17  and then consider other factors, a process comparable to evaluating pain, as established in

18  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  Using the Bunnell analysis, so

19  long as there is a medical basis for some symptoms, the ALJ may not find testimony incredible

20  solely because the objective medical evidence does not support the degree of alleged symptoms.[5]

21

_____

22         [5] In evaluating whether subjective complaints are credible, the ALJ should first consider
    objective medical evidence and then consider other factors.  If there is objective medical
23  evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged,
    including aggravating factors, medication, treatment and functional restrictions.  See Bunnell.
24  947 F.2d at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness,
    prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately
25  explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the
    applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally
26  SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

1   Absent affirmative evidence of malingering, the ALJ can reject the claimant's testimony about

2   the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

3   Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

4           Plaintiff takes issue with the ALJ's failure to articulate plaintiff's subjective

5   complaints and to undertake the required credibility analysis.  However, although the ALJ's

6   credibility finding is summary in nature (finding no. 6, AT 22), as reviewed below, the body of

7   the decision discusses the ALJ's reasons for discrediting the statements and testimony of

8   plaintiff's mother with regard to plaintiff's symptoms.  AT 15-16, 17, 18, 19, 20, 21.  Indeed,

9   plaintiff did not testify at the hearing due to a recent appendectomy, nor did she complete any

10  forms on her own given her young age.  AT 428-429.

11          Accordingly, the only information available to the ALJ was plaintiff's medical

12  records, school records, other documents in the administrative record, and the statements of

13  plaintiff's mother.  Because the ALJ in fact discredited some of the contentions made by

14  plaintiff's mother (not the plaintiff), the court examines whether his finding in that regard was

15  legally sufficient.

16          "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ

17  must take into account, unless he or she expressly determines to disregard such testimony and

18  gives reasons germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir.

19  2001) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)).  "One reason for which an

20  ALJ may discount lay testimony is that it conflicts with medical evidence."  Id. (citing Vincent v.

21  Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)).

22

23  and third party testimony about nature, severity and effect of symptoms, and inconsistencies
    between testimony and conduct also may be relevant.  Light v. Social Security Administration,
    119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating

24  medical problem may be a valid consideration by the ALJ in determining whether the alleged
    associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS,

25  44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations,
    see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

26  medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

1      Here, the ALJ found some of the statements of plaintiff's mother to be less than

2  credible.  In particular, the ALJ rejected plaintiff's mother's contention that plaintiff would have

3  to visit the emergency room two or three times weekly if not for her mother being a nurse and

4  providing care.  AT 15-16.  The ALJ wrote that this contention was not substantiated by the

5  child's medical records or the opinions of plaintiff's treating physicians.  AT 16.  Indeed, there is

6  no evidence that plaintiff required such frequent emergency care, and the record shows only one

7  visit to the emergency room, which was in connection with abdominal pains from eating a

8  Wendy's hamburger, not asthma.  AT 154-162.  Further, one of plaintiff's treating physicians

9  indicated that plaintiff's condition could be managed with medication and environmental

10 controls.  AT 392.  The ALJ also rejected the contention by plaintiff's mother that plaintiff's

11 medications make her hyperactive and unable to stay on task for very long, because there was no

12 evidence of such side effects in the treatment notes of plaintiff's physicians, and the reports of

13 plaintiff's teachers showed she had no problem staying on task or concentrating.  AT 18, 203-

14 206.  The ALJ also rejected plaintiff's mother's comments that the pronation of plaintiff's foot

15 causes her to fall often, noting the lack of ongoing treatment for this condition after successful

16 treatment with a temporary cast and inserts.  Further, the ALJ credited Dr. Marasigan's finding of

17 only a very minimal inward deviation with no limitation of movement.  AT 16, 18, 19, 169, 288.

18      Each of the mother's  contentions either was completely unsubstantiated or

19 contradicted by the record evidence.  The ALJ's reasons for discrediting such contentions were

20 germane and cogent, and therefore legally sufficient.  Accordingly, the ALJ's credibility finding

21 was not in error.

22      D.  Severe Impairments

23      Plaintiff also appears to take issue with one sentence in particular in the ALJ's

24 decision.  Specifically, plaintiff challenges the ALJ's passing comment that "other than some of

25 her respiratory/pulmonary conditions, the child does not even have a severe impairment."

26 /////

1 | AT 16.   Plaintiff contends that this contradiction undermines the ALJ's finding at step two of the

2 | analysis, and that he failed to articulate which of plaintiff's impairments were severe.

3 |     To the contrary, the ALJ found that plaintiff has "medically determinable

4 | impairments consisting of asthma, a deviated septum, allergic rhinitis/sinusitis, thalassemia, mild

5 | obesity, and minimal inward deviation of the left foot, which in combination are severe. . . ."

6 | AT 22.  The court understands the ALJ's comment to mean nothing more than plaintiff's

7 | conditions (other than asthma) would not by themselves constitute severe impairments.  This is

8 | entirely consistent with his finding that all of her impairments, in combination, qualify as

9 | "severe."  Accordingly, plaintiff's contention that the ALJ did not articulate plaintiff's severe

10 | impairments accurately is without merit.

    In accordance with the foregoing, IT IS HEREBY ORDERED that:

   1.  Plaintiff's motion for summary judgment is denied; and

   2.  The Commissioner's cross-motion for summary judgment is granted.

DATED:  September 28, 2007.

_____
U.S. MAGISTRATE JUDGE

KJM:mb
cornish.107.ss